IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

        PLAINTIFF

V.                           Case No. 1:07-CR-00244

AUBREY SCOTT, JR.

        DEFENDANT

## DEFENDANT'S SENTENCING MEMORANDUM

_____COMES NOW the Defendant, by undersigned counsel, and in response to the Court's Scheduling Order dated January 8, 2008, does hereby present the following Memorandum for Sentencing.

GENERAL INTRODUCTION

      This Defendant has committed a serious offense of Fraud but has completely cooperated with the government and taken responsibility.  As a result of his behavior and the related guilty plea, he has brought shame to himself and his family, as well as destroying the realities and lives of both.  By simply awaiting the normal sale of the family home in due course, he could have brought himself a good return on his investment while making the mortgage payments from a job earning about $70,000.00 on a house purchased for about $230,000.00

      Initially, the Defendant made substantial payments towards the mortgage with untainted funds. Thus, he did not buy the home with, or with the intention of hiding, stolen monies in it. When monies were wrongfully taken from his employer, they were subsequently used to pay down the mortgage, pay for his children's education and purchase certain luxury items, including

1

cars and jewelry.  As a result of this criminal case, and the related forfeiture action, the

Defendant has forfeited all of these other items, as well as the family house.  In connection with

the eventual sale of the home in order to effectuate restitution, certain concessions were made by

the Government to protect his wife and three (3) children, none of whom have been implicated in

the underlying behavior bringing out these proceedings.[1]  However, that family is losing the

family home, and for purposes of this hearing, might lose its father, husband and primary income

earner.

APPLICATION OF THE FEDERAL SENTENCING GUIDELINES

As part of the Plea Agreement made part of the record in this case, the government has

offered to lower the base offense level of 23 (based upon Fraud and a Specific Offense, at

2B1.1(a(b)) for three (3) levels down to at least twenty (20) for acceptance of responsibility.

However, under the Agreement, the Defendant is free to request other deviations, as part of that

same Agreement, which he is doing herein.  **See** Agreement, at paragraph Three (3) eg. Parties are

free to argue for increases, or decreases, respectively.

As a result of a now often cited and recent Supreme Court decision of 2007, there is a

presumption of reasonableness when the guidelines have been followed ("within guidelines"

sentence) but, this presumption **is no longer binding**.  Rita v. U.S., 127 S. Ct. 2456

(2007)(Wherein the Court ruled as a matter of law that the presumption does not favor the agency

[sentencing commission] expertise in adopting the guidelines over the judgment and evidentiary

---

[1]  A settlement was reached when a claim was filed in the related civil action, No. 1:07-CV-0994, on behalf of the wife raising the issue, *inter alia*, of the government's rights to seizure of her interests in either the real estate and/or its appreciation above and beyond the tainted funds of about $126,000.00 put towards the mortgage by the Defendant.

fact finding of the District Judge). In so doing, the Court found that this Court can and should

consider, *inter alia*, "offender characteristics", "deterrence", "rehabilitation" and "restitution". Id,

at 2463.

DEVIATIONS FOR THIS PARTICULAR CASE

      In general, mitigating factors are considered as important as aggravating ones. U.S. v.

Johnson, 403 F. Supp., 2d 721 (N.D., Iowa (2005)(Wherein the Court ruled that it is error, as a

matter of law for Courts not to consider factors relevant for a departure from the Guidelines). **See**

**also** U.S. v. Rosenberg, 806 F.2d 1169, *certiorari, denied*, 107 S. Ct. 2465, 481 U. S. 1070, 95 L.

Ed. 2d 873 (CA3 N.J., 1986)(Stating that courts can consider such factors, *inter alia*, as remorse

and amenability to rehabilitation).

      In applying the parameters outlined by Rita, this Court is urged to consider the following

factors:

(1). This offender has absolutely no criminal history, per stipulation of the parties and the finding

of the United States Probation Office (USPO)

(2).  The Defendant is the only father, husband and primary income provider for his wife and

three children.

(3) The Defendant, and his family, have cooperated with the requests for forfeiture, including of

the family home.

(4) The Defendant is making significant contributions towards the need to make restitution to his

employer, the National Academy of Sciences ("NAS") and can make even more if permitted to

be placed on probation (with at most an initial period in a program with work release)

(5) The willingness to make a guilty plea and cooperate shows a high degree of rehabilitation

already, and

(6) The imposition of a suspended sentence would be a high deterrent to any future actions of the same type shown here and simultaneously, promote and encourage restitution.

(i) **Emphasis on Background and Needs for Restitution**.

Although for fraudulent conveyance of less monies, there is precedent for alternative or reduced sentencing under similar circumstances.  For example, this Court is urged to adopt the approach and priorities employed in U.S. v. Carey, 368 F. Supp. 2d 891 (E. D., Wisc., 2005 (Wherein the Court recognized the importance of several mitigating factors to justify a downward guidelines departure, including a **non**violent offender who accepted responsibility, appeared to be a good father and who could "more easily pay restitution by remaining in the community").  While the Court in Carey did impose some prison time, it was a reduced amount of one year and one day for a very similar offense of wire fraud to secure social security benefits.

Like Carey, Scott presents this Court with a nonviolent offender who has accepted responsibility, is paying restitution, is a good father and would be better off in the community in order to complete the restitution.  However, unlike Scott, the Defendant in Carey did have a prior conviction, and was subject to one sentencing guideline enhancement for "concealing" the underlying offense.  Thus, it would appear that Scott is in an even better position to argue for probation and/or a suspended sentence of one (1) year.

There have been other cases involving pleas to fraud where the Courts have imposed sentences that constituted downward departures.  U.S. .v. Concepcion, 795 F. Supp. 1262 (E. D., N.Y, 1992)(Wherein Judge Weinstein found that the periods of time for incarceration in the Guidelines determined by dollar amounts lost did "not" adequately consider all relevant factors

including, *inter alia,* each Defendant's "background and circumstances" and the "needs of defendant's children and families".)

In <u>U.S. v. Concepcion, id.</u>, there were several cases consolidated as a result of a welfare fraud scheme involving several Co-Defendants. As a result of considering these other factors involving backgrounds and families, the Court in <u>Concepcion,</u> gave one Defendant, Patria Mercedes five (5) years probation with only the first served in a community treatment center even though that Defendant actually opened many fraudulent cases, herself obtained benefits, sold fraudulent documents, and even worked as a recruiter and liason in this fraud ring. <u>Id</u>, at 1296 (Instead emphasizing the "strong family life" and imposing a sentence emphasizing restitution and either community service and/or work, despite opposition from the Government that contended the Defendant lied and did not cooperate fully). Certainly, there is a similar need, here, to provide for the welfare of three (3) minor children and simultaneously, a strong family nexus to them as well as Scott's wife; plus, there is no known contention of noncooperation by the Government. In fact, the Agreement stipulates as to cooperation. **See** <u>Agreement</u>, at 15.

In another instance, a federal district judge was likewise confronted with a serious (bank) fraud case and chose to deviate from the sentencing guideline of 12-18 months to impose a non guidelines sentence of the maximum amount of supervised release to insure that the "Defendant satisfied his restitution commitment" <u>U.S .v. Peterson</u>, 363 F. Supp.2d 1060, 1063 (E. D., Wis. 2005)(Wherein the Court was confronted with a scheme of endorsing checks similarly stolen <u>from an employer</u> and moving them through different accounts and placed great emphasis on the Defendant's "good relationship" with his family and a sentence "that would allow him to remain in the community and working", <u>id</u>, at 1062). Interestingly, Judge Adelman imposed this

sentence, despite a prior misdemeanor theft conviction and a finding of abuse of trust. Id, at

1062.  Here, again, it would seem that Scott is in a better position with no criminal history and no

abuse of trust, based upon the Amendment to The Guidelines that post dates Peterson. In

addition, the wife, mother and aunt of the Defendant Scott have all written to the Court about the

family relationship(s), asking for leniency and continued family involvement for Scott.

### (ii) **Emphasis on Lack of Criminal Background**

In general, the Courts have favored those who come before it with the absence of a

criminal history.  U. S. v.Willis, 479 F Supp 2d 927 (E. D., Wisc, 2007)(In a very recent case

involving drug charges,  the District Judge imposed a fine of $1,000.00 and only 1 year and 1 day

in jail when he noted it could have been up to 5 years incarceration, noting the "minimal record"

and "positive background" of the Defendant).

In another instance, a "below guidelines" sentence of probation and house detention and

fines were determined to be adequate to deter future crime and, *inter alia*, based upon the

Defendant's "law abiding" background and good criminal history. U.S. v. Testerman, 446 F Supp

2d 640 (W. D., Va, 2006).

In a case involving another economic crime of bank fraud, the Court imposed an eight

month prison term well below the Guidelines because it was deemed "sufficient" in light of the

Defendant having "no" criminal background and the need to assist with the "ability to pay" back

the losses without any impairment due to a lengthier prison term. U.S. v. Montgomery, 165 Fed.

Appx 840 (CA 11, Ala., 2006).

Aalthough involving a firearms violation, yet another District Judge gave a reduced

sentence of three (3) months well outside of the guidelines range of 20 to 30 months where the

Defendant had no criminal record, was a role model to his children, was not a threat to commit another crime and there was no need for rehabilitation through correctional facilities. U. S.v. Meyers, 353 F. Supp. 2d 1026 (S.D., Iowa, 2005)

In the case at bar, as already noted herein, there is unanimity on the absence of any prior criminal conduct; and, solid attestations from several relatives in written form.

### (iii) Cooperation and Accountability

Both in terms of the guidelines and actual Court practice, sentences universally reflect any lack of cooperation, and reward acts of contrition and acceptance of responsibility. U. S. v. Perez, 904 F.2d 142 (CA2, N.Y., 1990)(Wherein the Court recognized how such cooperation helps save "scarce judicial and prosecutorial resources"). **See also** U. S. v. Beckman, 222 F.2d 512 (CA 8, S.D., 2000)(Wherein the Court ruled that pleas, cooperation and consideration therefore are valid tools for law enforcement).

There are some specific cases that may, respectfully, provide some guidance. For example, in one instance, the District Judge went below the Guidelines range of 18-24 months and imposed a sentence of five months imprisonment and five years probation with five months work release even in an instance where bank fraud resulted in the loss of over $500,000.00. U.S. v. Milne, 385 F. Supp. 2d 1309 (E. D., Wisc., 2005)(Wherein the Court emphasized, *inter alia*, efforts to help repay the losses, family ties and an otherwise good employment record).

In the case before this Court, it is clear that the Defendant has pled guilty, cooperated, accepted responsibility and consented to forfeiture of assets, thereby waiving any legal issues related to exactly to what interest(s) the government might be entitled. In addition, the Defendant has provided this Court with his own separate written statement regarding his own remorse. See

7

attached.

In this District, there has also been general yet relevant precedent.  In Re Sealed Case, 292 F.3d 913, 352 U.S. App., D.C 209, *on remand*, U.S. v. Coates, 295 F. Supp. 2d 11 (CA, DC, 2002)(Wherein the Court recognized and gave credit for a downward departure to the Defendant in a drug related case for accepting responsibility, having a desire to rehabilitate and having strong family and community ties).

### (iv) Alternative Sentencing.

In a rather far reaching, insightful and extensive decision in a very complex economic crimes case, Judge Weinstein, Concepcion, *supra*, again dealt with the issue of weighing the impact of financial losses with the impact on other victims in the community.  U. S. v. Abbadessa, 848 F. Supp. 369, vacated U.S. v. DeRiggi, 45 F.3rd 713, on remand 893 F. Supp. 171, affirmed 72 F.3d 7, vacated 50 F.3rd 3 on remand 893 F. Supp 171, affirmed 72 F.3d 7, vacated 54 F.3d 765, on remand 893 F. Spp. 171, **affirmed 72 F.3d 7** (E.D., N.Y., 1994), Here, the Court was confronted with multiple government employee Defendants who accepted bribes in return for overlooking or not inspecting New York taxis and Limousines. .U.S. v. Abbadessa, id.

However, the Court approached sentencing of many of the Defendants by keeping in mind that

> "Their presence in the community helps create a more stable environment and a model of work ethic that is vital to the health of New York's neighborhoods".

The Court made this remark in the context of noting that

> "A parent's role in supervising children and in providing support is particularly important in these times when uncontrolled children of broken families burden our courts and social institutions and add to welfare rolls". Abbadessa, at 383.

As a result, many of the Defendants, like Andrew Fichera, were sentenced to three (3) years of probation, and 500 hours of community service with six months in home confinement, restitution and fines. Id, at 396.

The same can be said about the neighborhoods in the District of Columbia and surrounding areas. Fathers like Defendant Scott are needed by their families and in his case, several children of minor ages who would otherwise be missing his guidance and financial support if there is lengthy incarceration. The needs of both his family, his community and even his former employer are best served if he is available for role modeling and financial support. Abbadessa. This is not an instance of a broken home, absent father and prior criminal acts.

UPWARD FACTORS URGED BY THE UNITED STATES OR THE USPO

(1) Alleged Breach of Trust

The PreSentence Report has built in an enhancement factor for alleged breach of trust. In reviewing the Guidelines, this typically is utilized when there is a misrepresentation of religious or government affiliation in order to secure monies. See Guidelines Commentary and Explanation, at page ninety-three (93). In this instance, there has been no misrepresentations made to third parties that induced such trust or the breach thereof.

Alternatively, if the USPO is attempting to stress an enhancement for internal breaches of trust, this equally does not apply. Eg. Section 3B1.3 "Abuse of Position of Trust or Use of Special Skills. As the related commentary clearly states "This adjustment may **not** be employed if an abuse of trust or skill level is included in the basic offense level **or specific offense characteristics**". (emphasis added). Here, there could not have been any Fraud committed but for the abuse of vouchers under a certain amount, which were essentially immune from audit or

review. In this manner, any abuse of trust is already inherently or inextricably intertwined with the commission of the offense itself.  U.S.S.G. 3B1.3 and Commentary (n.1)

Furthermore, no enhancement should be employed for this factor unless the abuse of trust contributed in some significant way and would not merely have provided an opportunity to commit the offense.  U.S. v. Barakat, 130 F.3d 1446 (11th Cir., 1997)(Wherein the Court found no special breach of trust for tax evasion) applying U.S.S.G. Section 3B1.3, comment (n.l) and adopting United States v. Mullens, 65 F.3d. 1560 ((11th Cir., 1995).

Here, the Defendant committed fraud but, his position gave him no greater opportunity than others at NAS to do so.  He was not a high level official or bureaucrat that coordinated his scheme with others and extracted or misspent many millions of dollars as with The Smithsonian, or the Tax Office of the D.C. Government, as the Court can take judicial notice has been well publicized in the media. U. S. V. Smaw, 22 F.3rd 330 ( D.C. Cir., 1994)(Wherein a sentence from this Court was vacated when the Appellate Court found that a time and attendance clerk that stole the identity of coworkers, applied for credit cards, and made personal charges or cash advances did not have "professional or managerial discretion", as required under amended commentary to the Guidelines for "breach of trust").

Like Scott, here, the Defendant in Smaw had the credit cards [monies} mailed to an address outside of work and relied upon information obtained at work.  Like Scott, here, the Defendant in Smaw had control over an exclusive phone number [vouchers] that were part of the fraud but, not an enhancement to it.  While this argument is not intended to excuse the behavior at issue, it does legitimately present a valid defense to any enhancement for "breach of trust".

(2) Alleged Sophisticated Scheme.

10

From its exceptions to the PreSentence Report, it is believed that the Government will attempt to use this factor for enhancement under the Guidelines. Here, the case is equally strong not to apply this factor. Typically, Courts have employed this factor _not_ to show such means were used to_commit_ the offense but, to "conceal its discovery". _Barakat_, at 1456, applying U.S.S.G. Section 2T1.1(b)(2)(where sophisticated means were used "...to impede the discovery of the existence or extent of the offense...") In the case at bar, the Defendant committed fraud by billing under a fictitious named company. Then, those funds were used to pay personal bills by withdrawals and/or transfers to other accounts. The existence of the fictitious company was not an additional factor; indeed, it was_the _factor that made the fraud even possible.

In such an instance as this, even the amount of the monies stolen or the repetitive means for securing them is not enough. U.S. v. Lewis, 93 F.3d 1075 (CA2, NY, 1996)(Wherein the Court found such complexity was not sufficient); *see also* U.S. v. Lewis, 907 F.S.683 (D.NY, 1995)(Wherein the Court evaluated the significance of 178 checks being used to transfer smaller amounts at a time.). Here, the use of many smaller requests did not conceal the offense, they were was part of it and made the fraud possible because of the Defendant's lower level of authority.

Even more elaborate schemes have not been enough. U.S. v. Bhogooan, 911 F.Supp.. 353 aff'd 116 F3d 189 (N.D., Ind., 1995)(Wherein the Court was confronted with splitting of monies between a corporation and its officers, actually changing customer credits on cards and using an outside CPA, finding that these acts went to the crime itself and did not constitute "sophisticated means"); *see also* U.S. v. Utecht, 238 F.3d 882( CA7, Wis., 2001)(Wherein the Court ruled as_a matter of law _that where the acts are already in the base offense, an enhancement is not reasonable and should be reversed as error). Here, respectfully, it would be error to employ

11

the use of this enhancement, since there was only one player, not even the changing of NAS

records, nor the splitting of monies or reliance on third parties. Utecht.

CONCLUSION(S)

Based upon the particular aspects of the offender's background, conduct in the criminal

case, and ties to the community and family, as well as the best interests of insuring adequate

restitution, the Defendant respectfully requests that this Court order a lengthy period of

supervised probation, or alternatively a suspended sentence of one year similar to what was

imposed in Carey, and Peterson, subject to certain terms and conditions that will insure full

restitution, ongoing supervision and probation til full restitution or any amendment thereto, is

satisfied; and, involve treatment for any psychological needs or issues motivating the criminal

behavior.

```
                              LAW OFFICES OF CHARLES F. CHESTER

                              By: _____
                              Charles Frederick Chester 17445
                              5l Monroe Place, Suite 707
                              Rockville, Maryland 20850
                              Counsel to Defendant
                              (301) 294-2500


                      Certificate of Service

     I hereby certify that a copy of the foregoing Defendant's
Sentencing Memorandum is being sent via regular mail, postage
prepaid to:  THOMAS ZENO, AUSA, 555 4th Street, N.W.
Washington, DC 20530 this _17th__ day of January, 2008.


              _____
              Charles F. Chester
```

November 15, 2007

Honorable Judge Ms. Colleen Kollar-Kotelly
U.S. Federal Courthouse
333 Constitution Ave.
Washington, D.C. 20001

Statement from Aubrey R. Scott Jr.

Dear Honorable Judge Colleen Kollar-Kotelly,

It's with a great amount of shame that I find myself in this situation with no one to point fingers at, find fault, or place blame on but myself.  I have betrayed the trust of a long time employer which I had a fiduciary responsibility to manage their investments appropriately and for that I apologize. I took advantage of that trust and I will have to live with the consequences of those actions for the rest of my life. I have been dishonest with my wife who didn't ask for nor deserve the situation that I have put her in and asked for her forgiveness. I have failed as a father to protect, provide for and guide my children with honor, respect and integrity.  I have let my family down. I have let my community down, and I have let myself down, I recognize that by saying I'm deeply sorry, it might not be enough and sufficient to address the pain and hurt that I've caused and the pain and hurt yet to be realized. Therefore, I want to ask for forgiveness for my actions and   hope all the victims in this find it in their heart to forgive me.

Sincerely,

Aubrey Scott

November 14, 2007

Dear Judge Colleen Kollar-Kotelly,


I a writing you on behalf of Aubrey Scott my husband of ten years, I have known my husband for 24 years. During the ten years of marriage we have had some wonderful and difficult times. However I never thought I would ever find myself in the situation that I am in with my husband. I know what my husband has done is wrong, and he needs to make amends. However if anyone is deserving of a second chance, I sincerely believe my husband is. He has apologized to me and I have forgiven him and support and prey for my husband.

It has been extremely hard on me and our family. Especially when you read in the news paper all these negatives and you know that's not the person that's been a part of my life for the past twenty-four years. The person I know is a great father who is involved in every aspect of my three son's life. The father who attends all school activities, the father who provides help with homework, the father who is just always there for his family. Eight years ago when my mother needed a place to live my husband did not hesitate to offer his support and never once complained. I know having my eighty year old mother live with us has not been easy for Aubrey and made even more difficult because my mother doesn't speak English, but Aubrey has always been there for me, he's just a caring individual. Two days before the police came to my home I returned home from dropping my children off at school to find my mother laying on the floor suffering from a stroke. At the time I was thinking the worst I called for emergency help and they transported my mother to the hospital where she recovered for about a month. I am a true believer in faith I was raised as a catholic and I believe that everything happens for a reason. I am thankful that my mother is recovering fine and she was sparred having to live through the experience that day. So I know God is watching over our family. And eventually we will make some positive progress out of this dreadful experience. I just ask that my family is able to make this journey with my husband.

Thank You,

Elizabeth Burgos-Scott